Peynado's Devisees v. Peynado's Executor.

CASE 2—EQUITY—MARCH 8, 1884.

## Peynado's Devisees v. Peynado's Executor.

**APPEAL FROM LOUISVILLE CHANCERY COURT.**

| 82 | 5 |
|---|---|
| 99 | 291 |
| 82 | 5 |
| 107 | 368 |
| 82 | 5 |
| 116 | 678 |
| 82 | 5 |
| 116 | 678 |
| 82 | 5 |
| 121 | 772 |
| 123 | 291 |
| 82 | 5 |
| 134 | 327 |

1. Where, from the language of a will, there is no doubt as to the testator's intention, the mandatory provisions of the will may be broadened and supplied by the Chancellor, in order to carry out the intention of the testator.

2. Particular expressions will be disregarded and defective descriptions of property will be supplied, so that the actual intention of the testator shall have effect.

3. A municipal corporation may hold property in trust under a will for charitable uses, and may be compelled to execute such trust.

4. Inasmuch as the widow has renounced the provisions of the will, the executors might proceed at once to execute the charity with the residuum, without waiting for her death.

5. According to public policy and the rules of comity, the devise can not be defeated, because it is for the benefit of foreign orphans, and to be administered according to Spanish jurisprudence.

6. The direction in the will that the Spanish Minister shall give security applies only if he should claim the custody of the fund.

BARRETT & BROWN FOR APPELLANTS.

The Malaga Institution devise is manifestly too vague to be upheld.

There is no discretion vested in any one to cure the vagueness.

The will expressly exacts security to be given by the Spanish Minister.

The security is a condition precedent.

There is no room for equity to interfere when there is no ambiguity in the testator's declaration.

If no security was required by the will, the court ought to exact it, for the protection of the remainder men, and to retain some effective control. (Averbeck v. Hall, 14 Bush, 505.)

Peynado's Devisees v. Peynado's Executor.

ROSEL WEISINGER FOR APPELLEE.

Edward Peynado clearly provided by his will for the erection of an orphan asylum in Malaga, Spain.

The trustee is the city of Malaga. No security can be required of the Spanish Minister.

The object of the charity is legal. The beneficiaries are sufficiently designated.

The will must be liberally construed, so as to carry out the testator's intention. Those provisions that it is impossible to perform, or inconsistent with the testator's wish, are of no effect.

Inasmuch as the charity is to be established in a foreign country, the court will not undertake to enforce the performance of duty by the trustee, but will leave these things to be done by the court of Spain.

(Wood v. Wood, 1 Met., 512; Curling v. Curling, 8 Dana, 38; Gen. Stat., chap. 13, sec. 2, p. 188; Chambers v. City of St. Louis, 29 Mo., 543; McDonough v. Murdock, 15 How., 367; Vidal v. Girard's ex'rs, 2 How, 127; Perry on Trusts, vol. 1, sec. 43, and vol. 2, secs. 718, 709, 741; 2 Kent, p. 280; Story, Eq. vol. 2, sec. 1165 to 1170, 1186; Chambers v. Baptist Ed'n Soc., 1 B. M., 215; Attorney-General v. Wallace, 7 B. M., 612; Moore v. Moore, 4 Dana, 355; 1 Jarman on Wills, Ran. & Tal. edit., 458; Silcox v. Harper, 32 Ga., 640; Emery v. Hill, 1 Russell, E. C. L., 112; Minet v. Vulliamy, 1 Russell, 113, note; Attorney-General v. Sturge, 19 Beavan, 597; Provost, &c., of Edinburg, v. Aubrey, 1 Ambler, 236; Attorney-General v. Lepine, 2 Swanston, 191.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT:

By his will, after making various bequests, Edward Peynado, devised the residuary of his estate to his wife Ida B. Peynado during her life, and then made the following provisions:

"15. One year after her death the whole of my residuary estate shall be converted into cash, and together with all accrued interest, shall be invested as follows:

"16. Half of the money left by me after my wife's death to be used in erecting a building in the suburbs of the city of Malaga, (Spain,) *to be under the patronage and care of the city authorities* and under the su-

perintendence of one or more Sisters of Charity, to be used as an Orphan Asylum and School for as many little poor orphan children (males) from respectable families as can possibly be taken. The Sisters in charge of said establishment should be well educated and well versed in geography, mathematics, grammar, history and penmanship, so as to be able to teach the children to become learned and industrious. I have no doubt the institution will be assisted and encouraged by the good and wealthy citizens of Malaga, and will some day become a great institution. The other half of my capital or residue to be placed out on good security so as to yield a semi-annual income, and shall be applied in paying the expenses incurred in keeping up said boarding establishment. I also leave our pictures, two oil paintings of my wife and myself, to the said institution.

"17. A true copy of this will will be sent to the then acting Spanish Minister of Spain, at Washington, D. C., by my executors, with the *request* that he should see that *an honest man be appointed* to superintend and fulfill my wish ; a man who without any reward for his services and only for the sake of doing good to my native city, will take willingly the responsibility and trouble necessary for such a task. The person *so appointed* will have to give security and also hand a semi-annual statement of the condition of the institution to *the then acting civil authorities of Malaga.* As the children of the institution become of age, I mean able enough to make a living for themselves, the friends of the institution will be kind enough to procure for them situations in commercial houses, stores and factories,

where they can earn an honest livelihood. This institution shall not, at any time, incur or owe a debt exceeding ($5,000) five thousand dollars.

"18. My executors will demand security from the Spanish Minister, or his representatives, that my will shall be carried out according to my wish, and they shall keep in trust, if they think proper, the whole of my residuary estate for three years after my death or until they are convinced of the fulfillment of my wish by the Spanish Minister *and authorities of Malaga.*

"19. If within three years after my death this bequest fail of execution from any cause, then the same shall lapse and be void, and the whole of my residuary estate, together with all accrued interest, shall be divided amongst the children of Francisco de P. Parra, Sr., Juan Jose Parra, Augustin Parra, Joaquin Parra, and Diego Parra, of New Orleans, La., and children of Jose Ma Parra and Jose Ma Vega, of Malaga, Spain."

The will was probated and the widow renounced its provisions in her behalf. This action was brought to obtain a judicial construction of the above clauses of the will, the ultimate residuary devisees named in the 19th clause, the City of Malaga, and the acting Spanish Minister being made defendants.

The City of Malaga and the Spanish Minister by their attorney *in fact*, answered, separately, claiming that the will created a trust with sufficient certainty for the purpose of erecting an Orphan Asylum in the City of Malaga ; that the City was designated as the trustee, and is capable, being an incorporated municipality, of accepting the trust, and, the widow having renounced the provisions of the will, entitled to the residuum and

ready to proceed, at once, to the performance of the duties prescribed by the will and according to its terms.

The ultimate residuary devisees asserted claim to the residuum of the estate on the grounds—

1. That the trust is too vague to be upheld and there is no discretion vested in any one to cure the uncertainty.

2. That the will requires the Spanish Minister to give security as a condition precedent to the existence or execution of the trust.

3. And if no security were required by the will, the court ought to exact it for their protection and to retain effective control of the property represented by the surety, in the event of non execution of the trust within three years after the testator's death.

Each of these propositions was rejected by the learned chancellor in his construction of the trust clauses of the will, and a judgment rendered by him in contraposition to all of them and the proper interlocutory orders entered to carry out the charitable intention of the testator. To test the legal virtue of that judgment this appeal was taken by the ultimate residuary devisees.

Their position has for its basis two propositions—

1. That there is no room for equity to interfere where there is no ambiguity in the testator's declaration.

2. That there is no ambiguity in this will but simply a non use of such terms as are essential to the creation of a trust.

It is not necessary to the results of this opinion, that the first proposition, were it law in an unlimited extent and suitable to all states of fact, which we are inclined

to doubt, should be combated, it is only indispensable that the assumptions of the second should be overthrown.

There is no ambiguity of intention in this will. More appropriate language might have been used in the creation of such an important and worthy trust, but when the language, whatever may be its purity or defects, expresses the intention of the testator in making a lawful disposition of his property, that intention will be the pole star to guide the court in interpreting the meaning of his words and construing the composition of his testament.

Where there is no ambiguity of intention ascertained by all of the language of the will, there can be no legal ambiguity attached to the will from particular expressions, defective description of property, and constrained mandatory provisions, for they may be controlled, supplied or broadened by the context and general purpose of the will. Applying these simple, cardinal rules to this will, it becomes clear that there is no uncertainty as to the trust and no need of discretion upon the part of any one to render it effectual. The testator did not intend that his estate should be converted into cash for investment as directed in the 16th clause, until one year after his wife's death. This purpose was based upon her anticipated acceptance of the provisions of the will, the object being to allow her the uninterrupted use during life of the property which he dedicated to the erection and support of the charitable institution, plainly described and specifically located by the 16th and 17th clauses. The reason for postponing the conversion of the residuary of his es-

tate, having ceased by the renunciation of the widow, that limitation ceased with it, and according to Wood v. Wood, 1 Met. 512, and Curling v. Curling, 8 Dana, 38, her act precipitated the conversion of the residuary after deducting her dowable and distributable portion. Hence there is no obstruction to the immediate performance of the trust duties prescribed by the testator. He says substantially, in the 16th clause, that half of the residuary of his estate shall be used to erect a building in the suburbs of the City of Malaga, Spain, to be used as an Orphan Asylum and School for male orphan children, and the remaining half of the residuary shall be loaned on good security, with interest payable semi-annually, to be applied to the current expenses of the institution, which he denominates "a boarding establishment." Language could hardly make the object of the trust more definite.

The institution, he directs, shall be under "*the patronage and care of the City authorities*" of Malaga; that a male superintendent of the institution be appointed by the city authorities, to whom he is required to give security for his conduct under his appointment, and also make a semi-annual statement of the condition of the institution. Thus we see that the City of Malaga, in its official capacity, is the trustee of the charity. It is its duty to look to it that the institution shall be conducted under the superintendence of Sisters of Charity, as teachers of the children. There is no want of a trustee to execute this charity; the City is the trustee and it is capable of performing the duties of that station. A municipal corporation may hold property in trust for charitable uses and be compelled to execute

such trust. (29 Mo., 592, Story's Eq., sec. 1191; Perry on Trusts, sec. 43, and authorities there cited.) And we are not aware of any law where a charity is definite, its objects specific, its creation legal, and the trustee capable, that renders such a trust void for uncertainty. The doctrine of *cy pres* construction is wholly unnecessary to the determination of this case, for the reason that the object of the trust is not forbidden by any law, and the intention of the testator is plain from his own words. The authorities in and out of this State clearly sustain the conclusions indicated. In the case of Moore's Heirs v. Moore's Devisees, 4th Dana. 354, a devise for the education of poor orphans, to be selected by the County Court, was upheld. In Curling's Adm. v. Curling's Heirs, 8 Dana. 38, the court sustained a devise for a public seminary, and appropriated the fund to a seminary then existing in the county.

These cases are founded upon devises not so clearly expressed as the one before us, and they are in accord with the doctrine of Story, and the succeeding cases of Chambers v. Baptist Education Society, 1 B. M., 215; Attorney-General v. Wallace's Devisees, 7 B. M., 611. The charity intended by the testator is sufficiently provided for in his will by the law and public policy of this State, and, according to the rules of comity, it can not be defeated, because it is for the benefit of foreign orphans, and to be administered according to Spanish jurisprudence, which we will presume, in the absence of anything to the contrary, is consistent with the dictates of humanity and the fundamental laws of an enlightened civilization.

Perry on Trusts says, in sec. 741: "Bequests to

be paid over to trustees in a foreign country for the establishment in such country of *a charitable institution*, will be paid over to such trustees, by order of court, to be administered by them under the jurisdiction of the courts of their own country."

This text is supported by numerous authorities and substantially stated by Story, in sec. 1186 of his Equity Jurisprudence, and until the principle it contains is restricted by inimical legislation, we feel bound to maintain it.

It is true the testator, in the 17th clause, *requests* the Spanish Minister to see that an honest man be appointed to superintend and fulfill his wish, but he is not empowered with authority to make the appointment. This request does not confer any power upon the Minister, nor is it an enforcible exaction of duty from him. He may or may not busy himself with the authorities of the city of Malaga in seeing that an honest man is appointed, but this will not render the charity void or necessarily prevent or endanger the fulfillment of the testator's wish. It is a request he had the privilege of making, and the Spanish Minister the lawful right to respect or decline, as he may choose. The 18th clause, by which the executors are required to demand security of the Spanish Minister, contemplated that the funds might be paid to him for translation to Malaga, and if his executors saw proper to entrust him with them, they were required to exact of him security, and if the executors did not wish to do that, they were authorized to keep the funds in trust for three years after the testator's death, or until they were convinced of the fulfillment of his wish by the Spanish Minister and the

*authorities* of Malaga. The Spanish Minister is not asking to handle the funds. He yields that to the city of Malaga, and it has appointed its attorney, in fact, to receive and carry the funds to it. The authorities of Malaga have shown that they are willing to undertake the trust in good faith for the purpose of fulfilling the testator's wishes; hence there is no necessity for the executors keeping the funds in trust for three years. The only security required in the will is of the Spanish Minister, in the event suggested, and as he is not to use or handle the funds, and the city comes in fact and asks the control of them by its own agents, we can see no reason for demanding surety of the city or the Spanish Minister. The testator did not intend to interpose obstacles to the execution of his bequest, so that three years might expire in a vain effort to remove them, and the bequest lapse in the meantime. Such would be the result if surety were required of the Spanish Minister, and he should refuse, or be unable to give it. The result would be the same if the court were to require security for the preservation of the property to the use of the appellants, and the authorities of the city of Malaga should decline to comply with the requisition. It is for the courts of Spain to see that the trust fund is preserved and the trust properly administered when lawfully applied to for such purposes.

Wherefore the judgment is affirmed.