CASE 49—PETITION EQUITY—MAY 19.

# Bedford, et al. v. Bedford's Administrator, et al.

APPEAL FROM LEWIS CIRCUIT COURT.

| 99 | 273 |
|---|---|
| e107 | 409 |

| 99 | 273 |
|---|---|
| e116 | 106 |

| 99 | 273 |
|---|---|
| e116 | 106 |

| 99 | 273 |
|---|---|
| 119 | 88 |

| 99 | 273 |
|---|---|
| f121 | 772 |
| f124 | 816 |

1. WILLS—RULE OF CONSTRUCTION.—The cardinal rule, which is of universal application, in the construction of wills, is that the intention of the testator as gathered from the instrument as a whole, must prevail, if not opposed to some positive provision of the law or some general principle of public policy.

2. CONSTRUCTION OF DEVISE.—A devise by a testator of land to his daughter with the following limitations: "The property bequeathed to my daughter, Elizabeth, to go to her child or children at her death, or if she and her son Robert die without children, the estate to revert to her four brothers now living, their heirs and assigns forever," must be construed as intending that the land so devised should revert to her brothers only if both the daughter and her son should die without issue previous to the death of the testator; and the daughter having survived the testator, on her death her son was invested with absolute title.

3. CONTINGENT DEVISE.—Where a testator provides in one clause of his will "and after my death my will and desire is that the same be equally divided between my five children, their heirs and assigns forever," and in a subsequent clause says, "It is my will and desire that in case of the death of my daughter, Elizabeth (she being one of the five children), before her son shall have arrived at the years of maturity, and should her son die without issue, that the property bequeathed shall revert and be merged in the estate;" both of the contingencies named in the last clause must happen before the property reverts to the estate; and the daughter having survived until her son attained his majority, became invested with absolute title to the land so devised.

4. CONSTRUCTION OF CODICIL.—Where the terms of a will clearly give an estate, the words of a codicil must manifest an equally clear intent to revoke or change it, before they will be construed to have such an effect.

5. RESIDUARY CLAUSE—CONSTRUCTION OF.—The restrictions in a residuary clause of a will do not operate upon the property embraced in the specific devises to the testator's children, but only upon the property passing to them under the residuary clause.

6. CONSTRUCTION OF DEVISE.—A provision by a testator in a codicil to his will that his wife should have for life all this land not specifically devised to his children, and that at her death all the property left to her for life should be divided into five equal parts, "four parts to go to my four sons and their heirs forever, and the other one-fifth I bequeath to my daughter," invests the daughter with the absolute title to her part thereof, just as it does the others..

7. CHARITABLE TRUST—SUFFICIENTLY DEFINITE.—A devise by a testatrix of lands to her son for life, and providing that if he died without children "I desire all my lands to be sold, and the money arising from said sales I give and bequeath to the State of Kentucky, in trust forever, for the use and benefit of the children of the State. I desire that the money constitute a permanent school fund, and the interest from this fund be appropriated annually towards the education of the children of this State," created a charitable trust, definite as to the trustee and the objects of the charity, and not invalid because of the indefinite number of the beneficiaries.

SAMUEL J. PUGH AND WM. GOEBEL FOR SUSAN M. BEDFORD.

1. The two-hundred acre tract of land in Nicholas county should have been adjudged to belong to Susan M. Bedford, because under the

Bedford, et al. v. Bedford's Administrator, et al.

will of Geo. M. Bedinger a life estate therein passed to his daughter, Elizabeth M. Bedford, and the remainder in fee therein to Robert Bedford, who devised his entire estate to Susan M. Bedford.

2. The provision in Bedinger's will in devising land to his daughter that "if she and her son, Robert, die without children the estate to revert to her four brothers, requires the happening of two contingencies before the reversion can take place:    First, the death of the daughter without child surviving her; second, the death of her son, Robert, without child surviving him.    The daughter having died leaving her son Robert surviving her, he takes the fee-simple title to the land.

3. The language of a codicil in declaring the interests of devisees in real estate, relates only to the property disposed of by the codicil.

4. The residuary clause of the will which provides that "the residue of my estate of every description, with all reversions, I will and bequeath to my five living children equally, and should any of them die without issue before they have disposed of their interest in any realty thus devised, their portion to the others living or having issue, their heirs or assigns forever," should be construed to vest a life-estate in the residuary estate in each of the five children in equal portions, with power of alienation; and that the remainder in fee was vested in the issue of the first takers, and upon failure of such issue, in the survivors of the first takers or their issue.

5. Although the provisions in the will that "the property bequeathed to my daughter, Elizabeth M. Bedford, to go to her child or children at her death" occurs in the will after the specific devise to the daughter and before the residuary provision, as the will was inartifically drawn, the location in the will of this provision should be considered of little importance, and it should be held to apply to the residuary estate as well as the specific estate devised to her.

6. The provision in the will of Elizabeth M. Bedford, which provides that in certain contingencies all of her property should go "to the State of Kentucky, in trust, that the said State will forever hold the same for the use and benefit of the children of the State," etc., is invalid because of its indefiniteness, and that devise being invalid the same passed by descent to Robert Bedford, even if his mother did hold the fee-simple title to the property.    (Leeds v. Shaw, 82 Ky., 80; Peynado v. Peynado, 82 Ky., 5; Moore v. Moore, 4 Dana, 354; Penick v. Thorn, 90 Ky., 665; Russell v. Allen, 107 U. S., 163; Vidal v. Girard, 2 How., 127.)

Bedford, et al. v. Bedford's Administrator, et al.

GEO. T. HALBERT AND WM. H. HOLT FOR JOSEPH M. BEDINGER'S

HEIRS, ETC.

1. Considering the will of Geo. M. Bedinger as a whole, it is plain that the limitation expressed therein as to the property devised to Elizabeth M. Bedford was intended by the testator to apply to all property therein devised to her, not only the specific devises but those *in residuum.*

2. The provision in the second codicil that "it is my will and desire that in the case of the death of my daughter, Elizabeth, before her son shall have arrived at the years of maturity, and should her son die without issue, that the property bequeathed shall revert and be merged in the estate," does not mean that if the daughter, Elizabeth, should die before her son arrived at the years of maturity that the son would then have a fee-simple title, and that he might, upon his death without issue will it to strangers in blood, as it was manifestly the intention of the testator to have his property remain in the family, and to revert to his other children and grandchildren in the event of the death of Robert without issue.

E. L. WORTHINGTON AND GARRETT S. WALL FOR APPELLEES.

1. Under the residuary clause of Bedinger's will Elizabeth Bedford took a fee-simple estate, (1) because she *did not die without issue,* so that the devise over on the contingency of her dying without issue never took effect, and (2) the devise over was invalid from the beginning because after giving absolute power of disposition, any limitation thereof by executory devise or otherwise, is void because it is repugnant to the estate first granted. (Ball v. Hancock, 82 Ky., 112; Howard v. Carusi, 109 U. S., 725; Jones v. Bacon, 28 Am. Rep., 1; Combs v. Combs, 1 Am. St. Rep., 359; 4 Kent's Com., 271.)

2. Where a life-estate is given to one with remainder over to another, with a provision that if the remainderman died without issue, then over, the devise over will not take effect unless the remainderman died without issue during the continuance of the particular estate. (Jones v. Moore, 28 S. W. Rep., 659; Ferguson v. Thomasson, 87 Ky., 519; Thackston v. Watson, 84 Ky., 206; Birney v. Richardson; 5 Dana, 424; Scott v. Best, 15 Ky. Law Rep., 795; Pruitt v. Holland, 92 Ky., 641; Webster v. Webster, 93 Ky., 632; Wills v. Wills, 85 Ky., 501.)

3. In the construction of wills, courts will sometimes change "and" into "or" or *vice versa;* but in no case should a court strike out a

word used by the testator and insert a different word of its own, unless the intent of the testator as disclosed by other words used by him imperatively requires such a change. (2 Pomeroy's Eq., sec. 871; Gilmore's Estate, 35 Am. St. Rep., 855; Redfield on Wills, vol. 1, p. 471; Jarman on Wills, vol. 1, p. 469; Roff v. Belt, 12 B. M., 647.)

4 .In most cases where "and" is construed disjunctively, it is in order to favor the vesting of a legacy, not in order to defeat a previously vested gift; and generally where it will have the latter effect, it will not be so construed. (1 Jarman on Wills, p. 490.)

5. Indefiniteness in a public gift for charitable purposes as to the class of beneficiaries, does not make the gift void; such indefiniteness exists in all charitable trusts, and is principally what distinguishes them from private trusts. (2 Pomeroy's Eq., sec. 1025; Russell v. Allen, 107 U. S., 182; 2 Perry on Trusts, sec. 687; Leeds v. Shaw, 82 Ky., 80; Peynado v. Peynado, 82 Ky., 5; Kinney v. Kinney, 86 Ky., 610; Attorney-General v. Wallace, 7 B. M., 611; Moore v. Moore, 4 Dana, 354; Curling v. Curling, 8 Dana, 38; Cromie v. Louisville Orphans' Home Society, 3 Bush, 365; Penick v. Thorn, 90 Ky., 665; Gass v. Wilhite, 2 Dana, 177; Vidal y. Girard, 2 Howard, 127.)

6. A devise to a State for any object which it may properly aid or provide for is valid and the State may take as trustee of such a charity. (1 Dillon on Municipal Corporations, sec. 31; Dickson v. U. S., 125 Mass., 311; McDonough's Ex'ors v. Murdock, 15 How., 367; 1 Perry on Trusts, sec. 41; 1 Lewin on Trusts, 30.)

7. If the trust itself is valid in law, neither the heirs nor any other private persons have the right to inquire into or contest the right of the State to take the property and execute the trust. (Vidal v. Girard, 2 How., 127; McDonough's Ex'ors v. Murdock, 15 How., 367.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT.

Mrs. Elizabeth M. Bedford died in Lewis county in the month of February, 1860, leaving a son, Robert Bedford, who was then thirty-two years old. She made a will a short time before she died, which was duly probated, and which contains the following devises:

"1st. I give and bequeath to my son, Robert Bedford, all of my lands in Lewis county, to have and to hold during his natural life. . . . If said Robert Bedford should die

leaving a child or children of his own body, then those lands are to go to those children and their heirs forever.

"2d. I give and bequeath to my son, Robert Bedford, all the lands and other property I own in the county of Nicholas, to have and to hold during his natural life.  .  .  .

"4th. In case my son Robert dies leaving children of his own natural body, I give and bequeath all my lands to them and their heirs forever.  But if my son dies without a child or children, then I desire that all my lands in Lewis and Nicholas be sold, and the money arising from said sales I give and bequeath to the State of Kentucky forever in trust, that the said State will forever hold the same for the use and benefit of the children of the State; that the said State will invest said money in some profitable bank stock, and the profits therefrom I desire to be appropriated annually forever towards the education of the children of the State of Kentucky, particularly the poor and most unintelligent.  I desire that this money constitute a permanent school fund, and the interest from this fund be appropriated annually towards the education of the children of this State."

The testatrix owned at the time of her death a tract of 343 acres of land in Lewis county, which she purchased in the year 1836.  She owned or claimed to own also a tract of 200 acres, and one of 300 acres, both in Nicholas county, and an undivided interest of one-fifth in a tract of about 460 acres, situated in Nicholas and Robertson counties, under the will of her father, George M. Bedinger, deceased, who died domiciled in Nicholas county, and whose will was probated and recorded in that county.  The question whether she owned and had the right to dispose of the lands claimed under her father's will must be determined by the meaning of several clauses of his will, which will be referred to.

Robert Bedford survived his mother twenty-seven years, and died in 1887, in Mason county, leaving a widow, appellant, Susan M. Bedford, having made a will by which he devised to his widow all of his property. He died without ever having had issue.

The death of George M. Bedinger occurred in the year 1843. He left a widow, Henrietta; four sons, Henry C., Daniel P., Benjamin F. and Joseph Bedinger; and one daughter, the said Elizabeth M. Bedford. By his will, after making numerous specific devises, including a liberal provision for the comfort of his widow, he left the residue of his property to his said sons and daughter. The body of his will was written in 1838, to which were added two codicils, the first bearing date 11th day of July, 1842, and the second the 28th day of May, 1843.

In the body of his will he devised to his daughter a tract of 200 acres of land, using the following language: "To my daughter, Elizabeth M. Bedford, I give and bequeath 200 acres of land lying on the east side of the Maysville turnpike road. . . . The property bequeathed to my daughter, Elizabeth M. Bedford, to go to her child or children at her death or, *if she and her son Robert die without children,* the estate to revert to her four brothers now living, their heirs or assigns forever."

The residuary clause of his will is as follows: "The residue of my estate, of every description, with all reversions, I will and bequeath to my five living children equally and should any of them *die without issue before they have disposed of their interest in any realty thus devised,* their portion to the others living or having issue, their heirs or assigns forever."

In the first codicil of his will he made the following provision: "My further will and desire is that my beloved wife,

Henrietta, should have the use and benefit of all my land not specifically willed to my children, and I hereby will and bequeath the same to her during her natural life, in addition to the bequests heretofore devsed to her, and at her death my will and desire is that that part given to my wife during her life should be divided into five equal parts, four parts to go to my sons, Henry C., Daniel P., Benjamin F. and Joseph Bedinger, and their heirs forever, and the other fifth bequeath to my daughter, Elizabeth Bedford, and should my children or grandchildren, to whom I have willed anything, die without issue, that then the property thus willed should revert back to my surviving children and their heirs in equal proportion."

Finally, in the second codicil to his will, which was written a short time before he died, he used the following language; "First, . . . instead of the various devises contained in the preceding will, I will to my wife one equal third part of all my property, both real, personal and mixed, during her natural life, and *after my death* my will and desire is that the same be equally divided between my five children now living, to-wit, Henry C., Daniel P., Benjamin F. and Joseph Bedinger and Elizabeth M. Bedford, their heirs and assigns forever; . . . sixth, it is my will and desire that in case of the death of my daughter, Elizabeth, *before her son shall have arrived at the years of maturity, and, should her son die without issue,* that the property bequeathed shall revert and be merged in the estate."

This suit was brought by Thos. S. Clark, administrator *de bonis non,* with the will annexed, of Elizabeth M. Bedford, deceased, to sell said lands and have the proceeds paid to the State of Kentucky in accordance with the terms of her will. There is no controversy about Mrs. Bedford's owner-

ship and her right to dispose of the tract of land in Lewis county, which was purchased by her in 1836. But the appellant, Susan M. Bedford claims all of the lands mentioned, both in Lewis and Nicholas counties under the will of her husband, the said Robert Bedford, alleging that the disposition of these lands in the will of his mother, Elizabeth M. Bedford, was so vague, indefinite and uncertain, especially in regard to the beneficiaries of the trust attempted to be created, as to render it absolutely void. Her contention is that by virtue of the provisions of the second codicil to the will of George M. Bedinger, deceased, Elizabeth M. Bedford having died after her son Robert reached his majority, the title to the lands in Nicholas county devised to her became absolute, and that, being thus seized in fee of all the lands claimed by her, at her death they descended to Robert, and passed to her under his will, the devise to the State of Kentucky, in trust being absolutely void, as above stated.

On the other hand it is claimed for the other appellants, the heirs of the four brothers of Mrs. Elizabeth M. Bedford, all of whom are dead, that under the will of George M. Bedinger, deceased, Mrs. Bedford had only a life interest in the Nicholas county lands devised to her, and that the said Robert Bedford having died without issue the said lands reverted at his death and vested in the four sons of the said George M. Bedinger, who are named in his will, or their heirs, while the appellee, Garrett S. Wall, who had, prior to the commencement of the action, been appointed by the superintendent of public instruction, in pursuance of the provisions of the General Statutes (section 4397 of the Kentucky Statutes), agent for the State to collect and take charge of the money, claims that under the will of Elizabeth M. Bedford, the State is entitled to receive as trustee the

proceeds of the sale of all of the lands intended to be disposed of by her, on the ground, as alleged, that she owned the same absolutely at the time of her death and had the right to dispose of them, and that the said Robert Bedford, to whom she devised a life estate in them, died "without a child or children."

On the final hearing of the cause, the court below in substance adjudged that Mrs. Bedford owned all of the lands above mentioned in fee simple, and that they passed under and in pursuance of her last will, except the 200-acre tract in Nicholas county, in which it was adjudged she had only a life estate, and which, therefore, did not pass under her will.

The court accordingly adjudged that the 200-acre tract belonged in proper proportions to the heirs of the four brothers of Mrs. Bedford: Joseph Bedinger, one of the four brothers, being a defendant, but having died after the judgment was rendered, his heirs were by proper proceedings made parties to the appeal in this court, and the judgment which we have recited is before us for review.

Although proper exceptions were taken in behalf of the State or its agent with regard to so much of the said judgment as established the claim of Joseph Bedinger and others to the 200-acre tract of land, the State or its agent is no longer concerned in that question as the case now stands, because no appeal was prayed or is now prosecuted from the judgment in behalf of the agent of the State. But the question as to the correctness of that part of the judgment is before us on the appeal of Susan M. Bedford, and its solution depends upon the meaning that is to be given to the clause of the will of George M. Bedinger, by which this tract of land was devised to Elizabeth M. Bedford, which we have quoted. This question we will notice first.

In a precedng part of his will the testator had devised
certain portions of his lands to each of his four sons. To
three of them he had devised their respective portions, "to
them and their heirs and assigns forever." The portion of
his other son, Joseph, he devised to trustees, for the use and
benefit of himself and his children, but upon such a scheme
as was intended that he or his children should eventually
have the actual control and final disposition of the land or
its proceeds. But to his daughter, Mrs. Bedford, he devised
the 200 acres limiting her interest in the land to a life estate,
by providing that it should go "to her child or children *at
her death*," and this limitation to her was followed by the
further provision that "if she *and* her son, Robert, *die with-
out children*," the estate to revert to her four brothers now
living, "their heirs or assigns forever."

It is contended that since both Mrs. Bedford and her
son Robert died without child or children surviving them,
the title to the land vested at the death of the said Robert
in the said Joseph Bedinger and the heirs of Mrs. Bedford's
other three brothers, all of whom were then dead. But this
contention can not be sustained. In construing testamen-
tary provisions of this kind it is sometimes quite difficult to
determine to what period the words "dying without children,"
or words of similar import, refer. And often precedents
are of little avail to aid in reaching a correct interpretation
of such provisions on account of the great variety of forms
of expression in wills, and of the different meanings that are
attached to technical words and sentences by different
testators.

On this subject, Mr. Justice Miller, in Clarke v. Boorman,
18 Wall., 493, said: "No two wills, probably, were ever
written in precisely the same language throughout, nor do

any two testators die under the same circumstances in relation to their estate, family and friends. And it would be very unsafe as well as unjust to expound the will of one man by the construction which a court of justice had given to that of another merely because similar words were used in particular parts of it."

These considerations illustrate the necessity of limiting the ordinary rules of testamentary construction in their application and of subordinating them to the cardinal rule, which is of universal application, that the intention of the testator, as gathered from his entire will, must prevail if not opposed to some positive provision of the law or to some general principle of public policy. (Schouler on Wills, sections 462, 464, 466, 468.)

Applying this cardinal rule of construction and gathering from the other provisions of the will of George M. Bedinger, with regard to these specific devises of land to his children that it was his intention that the living beneficiaries should be eventually the absolute owners of the portions devised to them respectively, it is our opinion that he intended that the portion devised to his daughter and her son should revert to his other children only in the event *both of them* died without children previous to his death.

Upon this construction, which we think is a rational one, and in exact accord with the intention of the testator thus ascertained, both Mrs. Bedford and her son Robert having survived the testator, the former was left with a life estate in the land, with remainder in fee to the latter, which was subject only to the possibility of being divided upon the death of Mrs. Bedford, leaving other children surviving her. It follows that at the death of Mrs. Bedford the said Robert, being her only child, became vested with the absolute title

to the 200 acres of land in controversy under the will of George M. Bedinger, deceased, and that it passed at his death and under his will to the appellant, Susan M. Bedford, unless the character of his interest in the land was changed by subsequent provisions of the will and codicils, and that question we will now consider.

In the body of his will, George M. Bedinger left to his wife, Henrietta, a farm of 300 acres, called his "mill farm," for life, besides a small farm of about 80 acres, also for life, it being the farm on which he lived, some negro slaves and all of his household and kitchen furniture and provisions.

It will be observed, by reference to the residuary clause of his will, which we have quoted, that taking out what he had left to his wife and the specific devises and bequests he had made to his five children, and some of his grandchildren named in the will, he left all the residue of his estate of every description to his "five living children." This clause contains the provision that should any of his five children "die without issue *before they have disposed of their interest* in any realty thus devised their portion (shall pass) to the others living or having issue."

It is ably contended by counsel for the appellees, and there is strong authority to support the contention that the language quoted vested his children with the unlimited right to dispose of the property left them respectively, and that, therefore, each of them was thereby vested with a fee simple title to the property received under this clause. We are inclined to the opinion that this is the legal effect of the language used when taken in connection with the words, "their heirs or assigns forever," which occur at the end of the clause quoted from. But it is not necessary for our purpose now to decide that point. We have quoted this

language to show that the restriction, if there be any in the residuary clause of the will, does not operate upon the property embraced in the specific devises to the children of the testator, but only upon the property that passed to them under the residuary clause. The language is with reference to the disposal by his children of the "realty *thus devised*"— that is, devised to them by the residuary clause. The language quoted is susceptible of no other reasonable interpretation.

Coming now to the first codicil, which was executed on the 11th day of July, 1842, by that addition to his will he provided that his wife should have for life all of his land *that had not been specifically devised to his children*, in addition to what had been left to her in the body of his will, and provided further that at her death all of the property left to his wife during her life should be divided into five equal parts—"four parts to go to my sons, Henry C., Daniel P., Benjamin F. and Joseph Bedinger, *and their heirs forever,* and the other fifth bequeath to my daughter, Elizabeth Bedford."

It is contended by counsel for appellants that the provision last quoted did not vest Mrs. Bedford with a fee in the property to which she was entitled under the first codicil, but we are of the opinion that it was intended by the testator that all of his children named in the codicil should have the absolute title to the property they were respectively entitled to thereunder, and that the use of the words "and their heirs forever," after the gift to his sons, and the failure to use the same words after the gift to his daughter, did not evince an intention on his part that the daughter should be vested with a less interest in her share than his sons would have in their respective shares; but much stress

is laid upon the latter part of this clause of the codicil, which provides that "should my children or grandchildren, to whom I have willed anything, die without issue, that then the property thus willed should revert back to my surviving children and their heirs in equal proportion," and it is contended that the legal effect of this part of the clause was to change the fee of the property devised to each of his children and to his grandchildren into a defeasible fee.

But while it is unnecessary to decide that question here, owing to the peculiar wording of the whole clause, it would not, in our opinion, be an unreasonable construction of the part of it last quoted to refer the words "die without issue" to the death of any of the testator's children or grandchildren before the death of the testator, as we have done in construing the clause by which the tract of 200 acres of land was devised to Mrs. Bedford; but whether this would be a fair construction or not it is quite evident that the first codicil was not intended to operate upon the specific devises made to the children of the testator in the body of his will because the land devised to them was expressly excepted from the devise therein made to his wife of all his land "not specifically willed to my children."

If, however, the clause now under consideration ought to receive the construction contended for by counsel for the appellants, so far as thus construed, it would affect the title to the property devised to Mrs. Bedford, its operation is defeated by the second codicil, which will be next considered.

The second codicil bears date 28th day of May, 1843, not long before the death of George M. Bedinger. He was led to add this codicil to his will by the fact that he had leased for a term of years his residence and adjoining property, a part of which had been devised to his wife, which made it

necessary, in his opinion, "to change and explain many
items contained in the will and codicil, to which this is at-
tached." Consequently, in the first item, "instead of the ·
various devises contained in the preceding will," he left to
his wife "one equal third part *of all my property,* both real,
personal and mixed, during her natural life," and provided
that *"after my death* my will and desire is that the same *be·
equally divided between my five children,"* naming them, *"their
heirs and assigns forever."*

In other items of this codicil he referred to some of the
specific devises that he had made, from which we conclude
that he did not intend that any of them should be changed
in any way by the first item of this codicil above quoted;
and it is a familiar principle that where the terms of a will
clearly give an estate, the words of a codicil must manifest
an equally clear intent to revoke or change it before they
will be allowed to have such an effect. (Sturgis v. Work,
122 Ind., 134, 17 Am. St. Rep., 349.)

Finally, in the sixth item of this codicil, he provided that
in case of the death of Mrs. Bedford, *"before her son shall
have arrived at the years of maturity, and should her son die
without issue,"* then the property "bequeathed" to her should
"revert and be merged in the estate." This is clearly *a
double contingency,* upon the happening of which the rever-
sion of the property devised to Mrs. Bedford under this
codicil was made to depend, and the general rule is that
when an estate depends upon a double contingency both
must concur. (Phelps v. Bates, 54 Conn., 11; 1 Am. St.
Rep., 92.)

We have seen that in this codicil the property was devised
to Mrs. Bedford and her four brothers in fee simple, but the
portion devised to Mrs. Bedford was made subject to rever-

sion ·upon two conditions or contingencies: First, her death *during the minority* of her son; and, second, his death without issue *during his minority.*

We think the second contingency, as we have stated it, is the proper construction, but we do not regard it as material because the effect of the failure of either event upon which the reversion depended to happen was to prevent the reversion— that is, the death of Mrs. Bedford during the minority of her son, *and his* death without issue either during his minority or after he attained his majority—so that when the son reached his majority, his mother surviving, every condition or contingency was removed from her title to the property, and she at once became the absolute owner of it with full power to dispose of it in any way she might choose to do.

It follows that Mrs. Elizabeth M. Bedford had the right to dispose of all her land by will except the tract of 200 acres, in which, as we have seen, she had only a life estate, and that the devise of it, after the death of her son, to the State of Kentucky in trust is valid unless it is so indefinite and uncertain as to the object and the beneficiaries of the trust as to render it impossible to execute the trust. And this we are now to determine.

The clause of Mrs. Bedford's will by which the lands that she owned in Lewis and Nicholas counties, and which she had the right to dispose of, were devised to the State of Kentucky in trust, has been quoted. After the termination of her son Robert Bedford's life estate in these lands which was devised to him, and upon his death, without child or children, she required the lands to be sold, and bequeathed the proceeds of the sales to the State of Kentucky "forever in trust," and to be held by the State forever "for the use

and benefit of the children of the State," the money to be "invested in some profitable bank stock, and the profits therefrom . . . to be appropriated annually forever toward the education of the children of the State of Kentucky, particularly the poor and most unintelligent." She desired that the money should constitute "a permanent school fund, and the interest from this fund be appropriated annually towards the education of the children of this State."

It is contended that this disposition of her property was invalid because of indefiniteness, and that the property descended to her son, Robert Bedford, and passed to his wife, appellant, Susan M. Bedford, under his will. The allegation is that the foregoing devise "is so uncertain, indefinite and ambiguous as to its purpose and beneficiary objects as to render it insusceptible of execution or enforcement, and is, therefore, ineffective and inoperative, and should be held for naught."

Counsel for appellants have wholly failed to sustain their contention as to the indefiniteness and the consequent invalidity of this bequest of the proceeds of the sales of the lands of Mrs. Bedford. It is definite, as has been fully sustained in the arguments of counsel for the agent of the State, first, as to the *trustee*; second, as to the *beneficiaries*; and, third, as to the *object* and *purpose* of the trust.

It is not contended that the State may not be a trustee of a charity, nor that *education* is not a proper purpose for which charitable uses may be created; but it is contended that the beneficiaries are so indefinitely described that they can not be identified. Indefiniteness in the latter particular characterizes all charitable trusts to a greater or less degree, and it is said to be the one thing that distinguishes such a trust from a mere private trust. (2 Pomeroy's

Equity, section 1025; Russell v. Allen, 107 U. S. Rep., 182.)

In the latter case the court said that charitable trusts "may, and indeed must be, for the benefit of an indefinite number of persons, for if all the beneficiaries are personally designated the trust lacks the essential element of indefiniteness which is one characteristic of a legal charity."

In numerous cases trusts of this kind have been sustained by this court which it is not necessary to review. (Moore's heirs v. Moore's devisees, &c., 4 Dana, 354; Curling v. Curling, 8 Dana, 38; Attorney General v. Wallace, 7 B. Mon., 611, Cromie's heirs v. Louisville Orphans' Home Society, 3 Bush, 365; Peynado v. Peynado, 82 Ky., 5; Leads v. Shaw's adm'r, *Ib.*, 79.)

In the Peynado case the beneficiaries of the trust were to be "as many little orphan children (males) from respectable families as can possibly be taken" into an orphan asylum and school that was provided for, and the trust was held to be valid.

In the case of Leeds v. Shaw a bequest was made of the income of certain stocks, which was directed "to be paid over every year to the trustees of the Lagrange School. District, and by them expended in the education of poor children, or towards the maintenance of a good common school in said district, etc.," and this was held not to be void for uncertainty. And so we hold that the bequest in this case is sufficiently definite in every particular, and that it is valid.

For the reasons given so much of the judgment of the court below as adjudged that the tract of two hundred acres of land in Nicholas county that was devised to Elizabeth M. Bedford specifically by the will of George M. Bedinger, deceased, belonged to Joseph M. Bedinger and others is reversed and the cause remanded, with directions to enter a

judgment in favor of the appellant, Susan M. Bedford, for the said tract of land, and so much of the said judgment as adjudged that the testatrix, Elizabeth M. Bedford, had a fee simple interest in the tract of 300 acres, and the one-fifth of the tract known as the Blue Lick property, containing about 460 acres, in Nicholas county, and in the tract of 343 acres in Lewis county, and that the same passed under her will, and that the said lands be sold and the proceeds thereof paid to Garrett S. Wall, the agent of the State of Kentucky, be affirmed, and such further proceedings may be had in the cause in the court below as may be necessary to execute the said judgment of sale and to secure the rights of the parties in interest.