Case 95—ACTION BY HARMAN JUSTI AND OTHERS AGAINST
THE PENNSYLVANIA LAND CO. FOR SPECIFIC PER-
FORMNCE OF CONTRACT FOR SALE OF LAND.—Jan-
uary 17.

☞   **Pennsylvania Land Co. v. Justi, &c.**

Appeal from Jefferson Circuit Court, Chancery
Branch, First Division.

SHACKELFORD MILLER Judge.

Judgment for plaintiffs. Defendant appeals. Af-
firmed.

1. Wills—Construction—In construing a will the general intention
   of the testator must prevail, though it may set aside some
   particular part of the will. When the intention of the tes-
   tator is plain from the will taken as a whole, the court will
   endeavor to carry out that intention, and in doing so will, if
   necessary, disregard particular expression and broaden
   restrictive provisions.

2. Codicils—Effect—Intention—The disposition by a will, will
   not be disturbed by an erroneous recital of its contents in
   a codicil, unless a design to modify or revoke the disposition
   in the will can be fairly collected from the whole will.

3. Same—By the first part of his will the testator devised to
   his wife his whole estate during her life, with power to dis-
   pose of it as she saw fit, and if any part of it was left at her
   death, it was to be equally divided among his five children
   per stirpes. He gave absolutely and without restriction to
   each of his two sons, John I. J. and Herman Justi, an undivided
   one-fifth of the property that remained at the death of his
   wife, and made a like provision for his daughter, Rebecca
   W. Justi. The dominant ideas of the testator were that his
   children should enjoy his estate equally while they lived, but
   that if any of the estate devised was left at their deaths,
   then it should go only to those of his blood. He then said
   in his codicil "It is said in the foregoing will that in case
   one of my daughters shall die without children her part shall
   return back to the Justi family again. I declare that in case
   one of my sons dies without children, likewise his portion

shall return back again to the Justi family," evidently having in mind the sole thought of having that part of the estate remaining at their deaths to revert to those of his blood. It is certain from the whole will and codicil that he did not, by these words in the codicil, intend to change or take away the power he had given the children to own, use, sell or mortgage the property as they pleased while they lived.

GIBSON, MARSHALL & GIBSON for appellant.

1. The disposition of a will will not be disturbed by an erroneous recital of its contents in a codicil, unless a design to modify or revoke the disposition in the will can be fairly collected from the whole will.

2. Where, under the original will, the testator's estate passed to his children by descent and not by devise, the widow being vested with a life estate and empowered to make such advancements to the children from time to time as their necessities required, a codicil providing that in the event of any of the children dying without children "the estate above devised to them shall be equally divided between my surviving children and the heirs of those that may die in equal shares," did not create a devise directly to the children and impose a limitation so as to prevent alienation for the purposes of distribution. (Beatty v. Wilson, 4 Ky. Law Rep., 827.)

A codicil is a part of the will to which it is attached or refers, and both must be taken and construed together, as one instrument, and when executed with the necessary solemnities of a will to pass lands is a republication of the will, and will pass lands acquired after the date of the will, but before the date of the codicil. (Beall v. Cunningham, 3 B. Mon., 390.)

Construction of Codicil—Where the terms of a will clearly give an estate, the words of a codicil must manifest an equally clear intent to revoke or change it, before they will be construed to have such an effect. (Bedford, &c. v. Bedford's Adm'r, &c., 99 Ky., 273.)

A devise to A. of all the property of testator, with a provision "I desire the said A. and B. to have the exclusive benefit of the above bequeathed estate, free from any control of C." (C. being the husband, A. the wife and B. the daughter), was held not to be a gift by implication to B.

A devise to one for life, with a remainder over, if the life tenant dies without leaving children, does not of itself create a gift by implication to the children of the life tenant. (Page on Wills, sec. 468.)

The rule already referred to, that a codicil is to be construed, as far as possible, so as to harmonize with the provisions of the will to which it is attached, is simply an application of the principle under discussion to a particular case. (Page on Wills, sec. 470.)

McDERMITT & RAY for appellees.

1. The only question here is as to the effect on the will of Mr. Justi's first codicil. By the original will of Mr. Justi, Herman and John I. J. Justi, were clearly given a fee-simple title to their part of the estate. The codicil evidently meant to provide what should become of their estate if they should die without children before their mother's death.

2. It is plain that the testator, Mr. Herman Justi, did not mean by his first codicil that the sons, after the mother's death, were to have exactly the same sort of an estate as his daughters had, because he had put the estate of two of his daughters in trust, with power in the trustees, with their consent, to sell. Clearly he did not mean to put the estate of Herman and John I. J. Justi in trust. No trustee was named, and there was no person who could convey for them with their consent.

3. The only reasonable interpretation of the codicil, to make it harmonize with the whole will, is that it meant merely to say that if the sons died without children before the mother's death, their parts should then pass to the three daughters or to the survivors.

### AUTHORITIES CITED.

Harvey v. Bell, 118 Ky., 512, 26 Ky. Law Rep., 381, 81 S. W., 671; Cochran v. Lee, 84 S. W., 337; Smith v. Courtney's Ex'ors, 85 S. W., 1101; Morton v. Morton, 85 S. W., 1188; Kephart v. Hieatt, 25 Ky. Law Rep., 1602; Beatty v. Wilson, 4 Ky. Law Rep., 827; Bedford v. Bedford, 99 Ky., 273.

OPINION BY JUDGE NUNN—Affirming.

The appellees, the children and grandchildren, all the descendants of the blood, of Herman Justi, and who are all adults, sold to the appellant on the 18th day of November, 1905, for the price of $66,000, a lot of ground in the city of Louisville, Ky., situated on the corner of Fourteenth and Market streets, fronting 120 feet on Market street and extending back

of equal width 195 feet to Congress alley. The appellees executed to the appellant a writing agreeing to make it a good and perfect title to the property. The appellant refused to accept the conveyance tendered, which was duly executed by all the appellees, upon the sole ground that the deed did not pass the fee-simple title to the interests of Herman and John I. J. Justi in the property. The lower court adjudged that the deed tendered should be accepted by the appellant, and that it passed to it the title of all the interests in the property. From this judgment appellant appeals.

To determine the correctness of this judgment it is necessary to construe the will of Herman Justi, probated in the Jefferson county court February 21, 1881. The testator had a wife and five children, three daughters and two sons, to whom he devised his property. Omitting the formal parts, the will is as follows:

"1. After the payment of my debts and funeral expenses, I devise to my beloved wife, Catherine Justi, during her life, all my real and personal estate with full power to sell, mortgage, or dispose of, as she may see fit, all or any part of the property in her discretion. At her death all that remains of the property shall be equally divided among my children and their heirs, they taking per stirpes, subject to the limitation and restrictions hereinafter expressed.

"2. To John Israel Jacob Justi I devise, absolutely and without restriction, an undivided one-fifth of the property remaining undisposed of at the death of my wife.

"3. I devise to Herman Justi, Jr., absolutely and without restriction, an undivided one-fifth of the property remaining undisposed of at the death of my wife.

"4. I devise to Rebecca Wilhelmine Justi, for her sole and separate use, an undivided one-fifth of the property remaining undisposed of at the death of my wife; provided, said Rebecca remains single. Should she marry, then her share of the estate shall vest in John I. J. Justi and Herman Justi, Jr., in trust for her sole and separate use during her life and, upon her death, the title shall vest absolutely in her children; or, if she die without children, then her share shall be equally divided among her brothers and sisters and, if any one of them be dead at that time leaving issue, his or her share of this part of the estate shall go to his or her children. The trustee may, with Rebecca's written consent sell and convey or mortgage her share or any part thereof in fee or otherwise and pay her the proceeds or reinvest the same as to them may seen best for her interest. Her husband, if she have one, shall have no right to or title in her share of the estate and shall have no control over it whatever.

"5. I devise to John I. J. Justi and Herman Justi, Jr., an undivided one-fifth of my estate remaining undisposed of at the death of my wife in trust for the sole and separate use of my daughter Elizabeth Muetze during her life, and upon her death the title shall vest absolutely in her children, or, if she die without children, then the title to her share shall vest in her surviving brothers and sisters, and if any of her brothers and sisters be dead, their share of this part of the estate shall go to their children. The trustees may, with Elizabeth's written consent, sell and convey or mortgage her share or any part thereof in fee or otherwise and pay her the proceeds or reinvest the same as to them may seem best for her interest. Her husband shall have no right to or title

in her share of the estate and no control whatever over it.

"6. (This section is identical with section 5, except that it relates to Helen Henrietta Miller.)

"9. I hereby appoint Herman Justi, Jr., and John I. J. Justi my executors and request that they may be permitted to qualify as such without security."

This will was made and executed in the year 1876. In the year 1879 the testator added the following codicil:

"As to the trusteeship my sons mentioned in the above will, shall act as trustees only after the death of my wife. So long as my wife lives she shall exclusively and entirely alone be the possessor of all my property. It is said in the foregoing will that in case one of my daughters shall die without children her part shall return back to the Justi family again. I declare that in case one of my sons dies without children likewise his portion shall return back again to the Justi family. My daughter Rebecca shall from the income of the whole estate be paid in advance twenty dollars per month from the death of my wife on."

This clause in the codicil, "I declare that in case one of my sons dies without children likewise his portion shall return back again to the Justi family," produced doubt as to the purpose of the testator, and caused this law-suit. The appellant contends that by this clause John I. J. and Herman Justi, Jr., can not convey a good title to their interests; that they do not own the fee. Appellees controverted this, and refer to the case of Harvey v. Bell, 118 Ky., 512, 81 S. W., 671, 26 Ky. Law Rep., 381, and contend with some plausibility that the first canon of construction laid down therein is conclusive of the question.

The canon of construction referred to is as follows: "Where an estate is devised to one for life, with remainder to another, and, if the remainderman, die without children or issue, then to a third person, the rule is that the words, 'dying without children or issue,' are restricted to the death of the remainderman before the termination of the particular estate." Appellees claim that the words. "In case one of my sons dies without children," refers to the period fixed for division and distribution, namely, the death of the testator's wife, and that, as Herman and John I. J. Justi were living at the time of the death of their mother, each of them took his portion in fee-simple. The difficulty in the way of giving this construction to the will and codicil in these words used in the codicil, "His portion shall return back again to the Justi family." This language certainly contemplates that the sons shall receive the estate; otherwise, it could not "return back again to the Justi family." The first provision of the will gives the whole estate to the wife, gives her the possession of and absolute dominion over the estate, with the express power to mortgage, sell, or do what she pleases with it, and what is left, if anything, goes to the children. In view of this clause of the will and this language in the codicil, we are not authorized to construe it as referring to the deaths of the sons in the lifetime of their mother, but must construe it as having reference to their deaths at any, or an indefinite, time. (See case of Powell's Ex'or v. Cosby, 89 S. W., 721, 28 Ky. Law Rep., 619, and the authorities cited.

But, having arrived at this conclusion, it does not follow that the lower court erred in adjudging that appellees could pass a good title to this property. The object and purpose in construing wills is to arrive at the intent and purpose of the testator. It is

a general rule that effect shall be given as far as practicable to every part of the will, in order that the intention of the testator may be fully carried out. A will should not be so construed, when the meaning of the language used is doubtful, as to render one of its provisions inconsistent with the testator's general intention. The general intention must prevail, even though it sets aside some particular part of the will. When the intention of a testator is plain from the will taken as a whole, the court will endeavor to carry out that intention, and in so doing will, if necessary, disregard particular expressions and broaden restrictive provisions. (See Morse v. Cross, 17 B. Mon., 735, Coat's Executors v. L. & N. R. R. Co., 92 Ky., 263, 13 Ky. Law Rep., 557, 17 S. W., 564, and Peynado's Devisees v. Peynado's Ex'or, 82 Ky., 5, 5 Ky. Law Rep., 783.) There is a general rule of construction to the effect that, where the terms of a will clearly give an estate, the words of a codicil must manifest an equally clear intent to revoke or change it before they will be construed to have such an effect. The disposition by a will will not be disturbed by an erroneous recital of its contents in a codicil, unless a design to modify or revoke the disposition in the will can be fairly collected from the whole will. (See the cases of Beatty v. Wilson, 4 Ky. Law Rep., 827, and Bedford v. Bedford, 99 Ky., 273, 18 Ky. Law Rep., 193, 35 S. W., 926.)

In view of these rules of construction, we will now consider the whole will, with the codicil, and, if possible, ascertain the intent of the testator. It will be observed by the first clause of the will that the testator devised to his wife his whole estate during her life, with full power to sell, mortgage, or dispose of, as she saw fit, all or any part of the property in her

discretion, and if any part of it was left at her death it was to be equally divided among his five children; they taking per stirpes.   He gave absolutely and without restriction to each of his two sons, John I. J. and Herman Justi, an undivided one-fifth of the property that remained at the death of his wife; and he made a like provision for his daughter Rebecca W. Justi, who was unmarried, with a provision that, if she married, then her share of the estate should vest in his sons in trust for her sole and separate use during her life, with power to the trustees with her written consent to sell and convey or mortgage her share, or any part thereof, in fee, and pay her the proceeds or reinvest the same as they might think best, but that part of her share of the estate which was left at her death should go to her children, and, if she left none, then to her brothers and sisters and descendants.   Her husband, if she had one, was expressly excluded from all control, right, or title in her share.   His other daughters were at that time married.   The testator named his sons as trustees for them, giving like power of disposition of the property, and that the balance of their property, if any, left at their deaths, should pass in like manner as Rebecca Justi's estate.   A like provision was made excluding their husbands from all control and interest therein.   It is clear from the will that the testator had implicit confidence in   all his children. He was willing to risk them with their shares of the estate with power of disposition, except they could not dispose of that part, if any, left at their deaths by will.   The dominant ideas of the testator were that his children should enjoy his estate equally while they lived, but that, if any of the estate devised was left at their deaths, then it should go only to those of

his blood, and that the husbands of his daughters should be excluded from all control over or interest in the property.

The question is, did the testator by the codicil change or intend to change his will in these respects? It is evident the same person did not write the two papers. It is clear that the person who wrote the will understood the use and meaning of words and sentences. It is equally clear that the person who wrote the codicil did not, except to a very limited extent. It appears from the first part of the codicil that the testator was laboring under an erroneous impression as to the meaning of his will with reference to the time when his sons should take their sisters' interests as trustees, and hence he said in the codicil they should as such trustees take only after the death of his wife, and that while she lived she should be the exclusive possessor of all his property. This was surplusage, for the will meant the same thing. It seems that it then entered the mind of the testator that, by the provisions of his will giving his sons their interests absolutely and without any restriction that part of their interests left at their deaths might go to others than of his blood. He therefore said: "It is said in the foregoing will that in case one of my daughters shall die without children her part shall return back to the Justi family again. I declare that in case one of my sons dies without children likewise his portion shall return back again to the Justi family"—evidently having in mind the sole thought of having that part of the estate remaining at their deaths to revert to those of his blood. It is certain, from the whole will and codicil, that he did not by these words in the codicil intend or mean to change or take away the power he had given his children to own, use, sell or mortgage the property as they pleased while they lived.

For these reasons, the judgment of the lower court is affirmed.